87 F.3d 1320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dan MANCINELLI, Plaintiff-Appellee,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellant.
 No. 94-15770.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided June 13, 1996.
Memorandum Withdrawn Pursuant to Parties' Joint Motion for
Dismissal September 5, 1996. For Superseding
Decision, see 1996 WL 501112.
 
 Before: THOMPSON, KLEINFELD and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-appellee Dan Mancinelli sued his longtime employer, defendant-appellant International Business Machines Corporation ("IBM") for constructive discharge in breach of an oral contract and the covenant of good faith and fair dealing. IBM appeals a jury verdict in favor of Mancinelli on the ground that New York law governed the suit, and therefore Mancinelli was an at-will employee who could be fired for any reason. Alternatively, IBM argues that Mancinelli did not make out his claim under California law. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 I. New York Law.
 
 
 4
 IBM's primary argument is that the district court erred by refusing to apply New York law. We review a district court's decision concerning the appropriate choice of law de novo. General Signal Corp. v. MCI Tel. Corp., 66 F.3d 1500, 1505 (9th Cir.1995). We review a district court's application of local rules for an abuse of discretion. Guam v. Sasaki Corp. v. Diana's, Inc., 881 F.2d 713, 715 (9th Cir.1989).
 
 
 5
 The district refused to apply New York law because IBM did not lodge proposed jury instructions invoking New York law at the beginning of trial as required by local rule. Eastern District of California Local Rule 163(a) provides that in civil actions, jury instructions must be lodged with the court at the beginning of the trial. If they are presented thereafter, they "may be deemed not to have been properly requested unless the necessity for the request arose in the course of trial and could not reasonably have been anticipated prior to trial." Id.
 
 
 6
 IBM claims that it was taken by surprise, and did not find out until trial, that New York law should apply to this suit. The basis of IBM's claim is that it did not know until trial that the only statements that could form the basis of an express oral contract were those statements made during Mancinelli's pre-employment interview in New York. IBM's claim is disingenuous.
 
 
 7
 Discovery revealed, and IBM's own employment records confirmed, that IBM hired and initially employed Mancinelli in New York for several years. Indeed, in their Joint Statement of Facts filed in preparation for the Pre-Trial Conference, the parties agreed that "Plaintiff began working for IBM in February 1967 in Poughkeepsie, New York." Thus, IBM knew that New York had substantial connections to contract formation. Discovery also revealed that the statements relied upon by Mancinelli to evidence a "just cause" contract involved the statements made during his pre-employment interview in New York.
 
 
 8
 Thus, IBM always knew the facts on which the applicability of New York law is based; it simply failed to realize their significance until the day of closing arguments. Accordingly, IBM's attempts to raise New York law at the eleventh hour were not based on necessity arising from Mancinelli's presentation of evidence at trial.
 
 
 9
 IBM's attempt to apply New York law was also untimely under Hurtado v. Superior Court, 114 Cal.Rptr. 106, 110 (Cal.1974). Hurtado provides that California courts must "apply its own rule of decision unless a party litigant timely invokes the law of a foreign state." Id. (emphasis added).[1]
 
 
 10
 When IBM first raised the applicability of New York law, the case had been fully presented to the jury; all that remained were closing arguments. Mancinelli had presented his case in reliance on California law. At the very least, a substantial recess, and possible reopening of plaintiff's case, would have been required to permit Mancinelli time to research New York law, potentially conduct more discovery and put on additional evidence. Quite possibly, a mistrial may have been required. Undoubtedly, California sought to avoid such problems by including a timeliness provision in its choice of law analysis. Because IBM failed to raise the choice of law issue prior to the start of trial, the district court properly refused to instruct on New York law under both its Local Rule 163(a) and California law.[2]
 
 
 11
 II. California Law.
 
 
 12
 IBM next argues that even under California law, the jury verdict cannot stand. A jury verdict must stand if it is supported by substantial evidence. Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir.1995). Reversal is appropriate only if "the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion--that the moving party is entitled to judgment notwithstanding the adverse verdict." Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th Cir.1990).
 
 
 13
 A. "Just Cause" Contract.
 
 
 14
 IBM maintains that there is not substantial evidence of a "just cause" employment contract. California employment relationships are presumptively at-will. Cal.Lab.Code § 2922. Under an at-will employment relationship, employers can fire or demote employees for any reason or for no reason. Foley v. Interactive Data Corp., 254 Cal.Rptr. 211, 214 (Cal.1988). This presumption can be overcome, however, by evidence that the parties have entered into an express oral or written agreement "specifying the length of employment or the grounds for termination." Id. at 223.
 
 
 15
 Mancinelli testified that when he interviewed for a position with IBM in 1967, he expressed concerns about job security and career potential. In response to these concerns, Mancinelli was told that IBM did not fire without a "good reason." From this statement, a jury could reasonably infer that IBM had manifested an outward expression of hiring Mancinelli as a "just cause" employee.[3] See, e.g., Finch v. Brenda Raceway Corp., 27 Cal.Rptr. 531 (Cal.App.1994) (repeated assurances of job security during interview formed the basis of a just-cause contract).
 
 
 16
 B. Breach of Contract and Covenant.
 
 
 17
 IBM argues that even if there were an express contract, there is no breach because it had good cause to remove Mancinelli as the branch manager of the Sacramento facility.[4] IBM also argues that there is no evidence of bad faith to support the jury's finding that IBM breached its covenant of good faith and fair dealing. IBM claims: 1) it followed its own company policies by investigating Mancinelli's personal relationship with a co-worker; 2) it had significant evidence that Mancinelli's relationship with the co-worker caused disruption and discord; and 3) the alternate jobs offered to Mancinelli were more than appropriate for someone with his qualifications.
 
 
 18
 It is not, of course, our job to reweigh the evidence. We can only determine whether there was substantial evidence that IBM's actions were "trivial, capricious, unrelated to business needs or goals, or pretextual." Wilkerson v. Wells Fargo Bank, 261 Cal.Rptr. 185, 192 (Cal.App.1989).
 
 
 19
 To that end, Mancinelli presented evidence that he performed his job well and his employees liked him. Although IBM had a general policy to protect the private lives of its employees, IBM nonetheless investigated his. Moreover, other IBM employees in Sacramento dated or were married to co-workers without company intervention. The evidence also revealed that while IBM removed Mancinelli as branch manager, the other party to the relationship received a promotion and pay raise. Finally, although IBM allowed other executives to go on "special assignment" while looking for a suitable new position, Mancinelli was given only three days to decide whether to accept one of two out-of-state positions, which were steps down in grade level, pay and responsibility.
 
 
 20
 Reasonable minds could accept this evidence to support a conclusion that IBM's proffered reasons for removing Mancinelli as branch manager were pretextual, and made in bad faith. See Rulon-Miller v. International Business Mach. Corp., 208 Cal.Rptr. 524 (Cal.App.1984) (affirming jury verdict that IBM acted pretextually in firing employee allegedly because of her romantic relationship with employee of competitor).
 
 
 21
 C. Constructive Discharge.
 
 
 22
 To prevail on his claims, Mancinelli also had to prove that IBM's actions amounted to a constructive discharge. Soules v. Cadam, Inc., 3 Cal.Rptr.2d 6, 11 (1991). IBM claims that under California law Mancinelli cannot establish constructive discharge under this fact pattern.
 
 
 23
 California allows certain employees, who have initiated their own separation from employment, to maintain wrongful termination suits under a theory of constructive discharge. Id. at 9. To establish a constructive discharge, a plaintiff must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." Turner v. Anheuser-Busch, 32 Cal.Rptr.2d 223, 230 (Cal.1994). However, "a poor performance rating or a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge." Id. at 228 (citing Soules, 3 Cal.Rptr.2d at 11).
 
 
 24
 Here, the district court instructed the jury that a constructive termination occurs when "conditions [are] so intolerable or aggravated ... that a reasonable person in the employee's position would have resigned." The district court further instructed:
 
 
 25
 In determining whether the employee's resignation was a constructive termination of employment, you should consider all of the circumstances, including but not limited to, whether:
 
 
 26
 1) The employer obtained the employee's resignation through coercion, fraud, threats or undue influence;
 
 
 27
 2) The employer demoted the employee without good cause;
 
 
 28
 3) The employer forced the employee to work under such difficult or unpleasant circumstances as would cause a reasonable person to resign;
 
 
 29
 4) The employer without good cause substantially reduced the employee's salary, wages or benefits.
 
 
 30
 IBM argues that these instructions misstated California constructive discharge law, because a demotion without good cause, or a reduction in the employee's salary without good cause, does not constitute constructive discharge. See Soules, 3 Cal.Rptr. at 11.
 
 
 31
 IBM's argument must fail because jury instructions are to be viewed as a whole. Larez v. Holcomb, 16 F.3d 1513, 1517 (9th Cir.1994). The district court instructed that demotion without good cause was relevant to a constructive discharge analysis. It did not, as IBM suggests, instruct that a demotion without good cause can be the entire basis of constructive discharge.
 
 
 32
 Viewing the evidence in the light most favorable to the plaintiff, there is substantial evidence that the "demotion choice" given to Mancinelli constituted intolerable conditions that would force a reasonable person to resign. Mancinelli had worked for IBM for approximately twenty years. After working in Northern California for many years, IBM gave Mancinelli three days to decide whether to relocate to an inferior position in either Arizona or Idaho. IBM refused to put Mancinelli on special assignment to allow him time to find a more suitable position in the company, even though IBM had done this for other similarly situated employees. Thus, the evidence is not limited to demotion without cause, and supports the jury's finding that the choice presented to Mancinelli was intolerable.
 
 
 33
 The judgment is AFFIRMED.
 
 
 34
 TASHIMA, Circuit Judge, concurring and dissenting.
 
 
 35
 I concur in all but Part II(C) of the Memorandum disposition, from which I dissent because Mancinelli cannot show constructive discharge as a matter of law.
 
 
 36
 Considered in the light most favorable to the plaintiff, the facts reveal that Mancinelli left IBM because he was demoted without good cause. However, a demotion without good cause, without more, will not support a claim for constructive discharge. Turner v. Anheuser-Busch, 32 Cal.Rptr.2d 223, 230 (Cal.1994). Mancinelli did not leave IBM because it investigated his personal relationship with a subordinate, but because he did not like either of the two positions offered to him. After IBM informed Mancinelli that it would remove him as branch manager, Mancinelli indicated that he wanted to remain with IBM at a position in Europe or Northern California. When IBM refused to accommodate this request, Mancinelli resigned, contending that the two positions offered were beneath him. California law unambiguously holds that bruised egos and embarrassment about demotions cannot support a claim for constructive discharge. Gibson v. Aro Corp., 38 Cal.Rptr.2d 882, 887 (Cal.App.1995).
 
 
 37
 To the contrary, to determine whether a demotion was so drastic or punitive that it rises to the level of intolerable work conditions, the "proper focus is on the working conditions themselves." Id. For example, in Lee v. Bank of America, 32 Cal.Rptr.2d 388 (Cal.App.1994), the plaintiff was demoted after she complained about allegedly unsafe work conditions. In rejecting a claim for constructive discharge, Lee held:
 
 
 38
 [T]here is certainly nothing about being an assistant bank manager in a branch office in Laguna Beach that even remotely suggests the required element of intolerability. Indeed, no reasonable person could seriously suggest that the difference in pay, responsibility, conditions and prestige between being a full-fledged branch manager in Costa Mesa and being an assistant branch manager in Laguna Beach is so great that going from the former to the latter even comes close to being "intolerable."
 
 
 39
 Id. at 397-98.
 
 
 40
 Here, IBM offered Mancinelli the choice of two positions only slightly below his previous position. In Sacramento, Mancinelli was a level 61 employee. The Phoenix Industry Advisor position was a level 60 position, and the Idaho Falls Unit Manager position was a level 59 position. Although these were demotions, as in Lee, the positions were not so beneath his previous position that either choice could be characterized as "intolerable."
 
 
 41
 The majority's discussion of constructive discharge focuses on whether IBM was justified in demoting Mancinelli. However, even if IBM did not have good cause to demote Mancinelli, he was not entitled to resign unless the demotion constituted an intolerable work environment.[1] Mancinelli simply did not make this showing. A demotion of one or two levels is not enough to compel a resignation. California law is unequivocal on this point. I would therefore reverse the judgment.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Like the district court, we are bound to follow Hurtado 's timeliness provision. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that a choice of law inquiry is substantive under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). To write out the timeliness requirement of California's choice of law analysis, as IBM suggests, would violate the principles underlying Klaxon and Erie
 
 
 [2]
 General Signal, 66 F.3d 1500, does not mandate a contrary result. The contract at issue in General Signal specifically called for New York law to govern the contract. Id. at 1505. Twenty-one months into the case, and three months before trial, the defendant first argued that New York law should apply. Id. The district court agreed, and we affirmed. Id. As the defendant raised the issue three months before the trial was to begin, the plaintiff had time to prepare. Additionally, as the contract expressly called for New York law, the plaintiff could not have been surprised by the defendant's request. Here, Mancinelli was given no time to consider or prepare for application of New York law. Accordingly, General Signal is distinguishable from the instant case
 
 
 [3]
 IBM claims that it did not assent to Mancinelli's "just cause" standing, and thus, the contract lacked mutuality. It is, however, elementary contract law that outward manifestations of assent control over unexpressed intentions or understandings. See, e.g., Merced County Sheriff's Employees' Ass'n v. Merced County, 233 Cal.Rptr. 519, 524 (Cal.App.1987); see also 1 Witkin, Summary of Calif. Law, Contracts § 119 (9th Ed.1987 & Supp.1995). Because IBM expressly promised Mancinelli that he would not be fired without a "good reason," the cases relied upon by IBM are distinguishable. See Douglas v. Anderson, 656 F.2d 528, 535 (9th Cir.1991) (although plaintiff had discussed permanent employment until retirement, employer had not agreed to this term); Newfield v. Insurance Co. of the West, 203 Cal.Rptr. 9, 11-12 (Cal.App.1984) (promise of permanent career, unless accompanied by an express promise of a just cause contract, does not alter at-will status); Hillsman v. Sutter Community Hosp., 200 Cal.Rptr. 605 (Cal.App.1984) (offer letter closing with a hope for a "long, pleasant mutually satisfactory relationship" did not alter at-will status)
 
 
 [4]
 IBM also argues that, as the contract provided only that IBM would not fire without good reason, as opposed to transfer or demote, there cannot have been a breach because Mancinelli resigned. This argument begs the question of whether there was a constructive discharge
 
 
 [1]
 California law expressly provides a cause of action for wrongful demotion, even though the demotion would not separately support a claim for constructive discharge. Scott v. Pacific Gas & Elec., 46 Cal.Rptr.2d 427, 439 (Cal.1995)