**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: RICHARD W. YORK,

*Debtor*,

-----------------------------

RICHARD W. YORK,

*Appellant*,

v.

UNITED STATES OF AMERICA, through its agency Internal Revenue Service,

*Appellee*.

No. 20-56047

D.C. No. 2:19-cv-06214-WDK

OPINION

Appeal from the United States District Court
for the Central District of California
William D. Keller, District Judge, Presiding

Argued and Submitted, September 13, 2021
Submission Vacated, May 22, 2023
Resubmitted, August 7, 2023
Pasadena, California

Filed August 11, 2023

Before:  Ronald M. Gould, Marsha S. Berzon, and Daniel
P. Collins, Circuit Judges.

Opinion by Judge Collins;
Dissent by Judge Berzon

## SUMMARY[*]

### Bankruptcy

The panel affirmed the district court's order affirming the bankruptcy court's judgment in favor of the United States in an adversary proceeding brought by Richard York, a Chapter 13 debtor.

York, former Chief Financial Officer of Convergence Ethanol, Inc., and former employee of Convergence and its subsidiary California MEMS USA, Inc., challenged his liability for the unpaid payroll taxes of California MEMS.  The bankruptcy court denied both sides' motions for summary judgment on the issue of whether York was a "responsible person" regarding the payroll taxes under 26 U.S.C. § 6672.  Rather than proceed to trial, York agreed to a stipulated judgment allowing the Internal Revenue Service's claim, but he made clear on the record that his consent was subject to his stated intention to appeal that judgment on the grounds that his motion for summary judgment should have been granted.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that it had jurisdiction under 28 U.S.C. § 158, on appeal from the stipulated judgment, to review the earlier denial of summary judgment.  The panel concluded that the bankruptcy court's judgment was sufficiently "final" under § 158(d)(1) because it fully disposed of the claims raised by York's adversary complaint.  The panel held that jurisdiction was not precluded by the holding of *Ortiz v. Jordan*, 562 U.S. 180 (2011), and *Dupree v. Younger*, 598 U.S. 729 (2023), that, on appeal from a final judgment after a trial on the merits, an appellate court may not review a pretrial order denying summary judgment if that denial was based on the presence of a disputed issue of material fact.  Here, there was no full record developed at trial that could be said to supersede the summary judgment record.  The panel held that jurisdiction also was not precluded by the holding of *Microsoft v. Baker*, 582 U.S. 23 (2017), that plaintiffs who were refused class certification could not obtain review of that interlocutory order by voluntarily dismissing their individual claims with prejudice while reserving a right to revive them if the appeal of the class-certification denial was successful.  The panel concluded that the normal rule against appealing a consent judgment did not apply because the circumstances made clear that York intended to preserve his right to appeal the adverse summary judgment order, and his reservation of a right to appeal the consent judgment was not fundamentally inconsistent with his consent.  Finally, the panel concluded that this was not a case in which York's acquiescence to the stipulated judgment destroyed the adversity required to establish the case or controversy required by Article III.

Turning to the merits, the panel held that the bankruptcy court correctly concluded that York failed to show that, viewing the summary judgment record in the light most

favorable to the IRS, a rational trier of fact could not reasonably find in the IRS's favor. The panel held that the IRS may impose a penalty on a person required to collect and then pay over a payroll tax if that individual (1) qualifies as a "responsible person," (2) fails to collect or account and pay over the tax, and (3) acts willfully in doing so. York did not dispute that the relevant payroll taxes were not paid over. The panel concluded that York could reasonably be found, on the record in this case, to be a responsible person because he had the effective power to pay the taxes. The panel further concluded that a trier of fact could reasonably determine that York acted willfully.

Dissenting, Judge Berzon wrote that the parties' agreement that the IRS would prevail at trial superseded the bankruptcy court's earlier decision to deny summary judgment and send the case to trial. As a result, York could not appeal the denial of summary judgment.

## COUNSEL

Mark Bernsley (argued), Law Offices of Mark Bernsley APC, Woodland Hills, California, for Appellant.

Robert J. Branman (argued) and Joan I. Oppenheimer, Attorneys; Tracy Wilkison, Acting United States Attorney; E. Martin Estrada, United States Attorney; David A. Hubbert, Acting Assistant Attorney General; Tax Division/Appellate Section, United States Department of Justice, Washington, D.C.; Jolene Tanner, Assistant United States Attorney; United States Department of Justice, Los Angeles, California; for Appellee.

**OPINION**

COLLINS, Circuit Judge:

After a company failed to pay over payroll taxes for its employees, the Internal Revenue Service ("IRS") assessed, pursuant to Internal Revenue Code ("I.R.C.") § 6672, a personal penalty for the amount of the unpaid taxes against the company's former Chief Financial Officer, Richard York. When York filed for bankruptcy, the IRS filed a proof of claim in his bankruptcy proceeding, which in turn led York to file an adversary complaint challenging his liability to the IRS. The parties ultimately filed cross-motions for summary judgment, but the bankruptcy court denied them both in relevant part. Rather than proceed to trial, York agreed to a stipulated judgment allowing the IRS's claim, but he made clear on the record that his consent was subject to his stated intention to appeal that judgment on the grounds that his motion for summary judgment should have been granted. The district court asserted jurisdiction over the matter as an appeal from a final judgment in an adversary proceeding, *see* 28 U.S.C. § 158(a)(1), but it affirmed on the merits. York thereupon appealed to this court.

After requesting and receiving the parties' supplemental briefs as to whether we have jurisdiction, on appeal from a stipulated judgment, to review an earlier denial of summary judgment, we conclude that we have jurisdiction over York's appeal. On the merits, we agree that the bankruptcy court properly denied York's motion for summary judgment, and we therefore affirm.

**I**

Subject to only a handful of exceptions that are irrelevant to our review, the IRS expressly stated below that, for purposes of responding to York's summary judgment motion, it did "not dispute the facts as proposed" by York in his "Separate Statement of Uncontroverted Facts." Accordingly, for purposes of this appeal, we take the following facts as true.

For several years, York was an employee of both Convergence Ethanol, Inc. ("Convergence"), an oil-and-gas technology company, and its subsidiary California MEMS USA, Inc. ("CA MEMS," and, collectively with Convergence, the "Company"). York "was hired primarily to effect compliance with SEC filing requirements" for Convergence and its subsidiaries, and in order to allow him to sign the necessary certifications, he was given the title of Chief Financial Officer ("CFO") of Convergence. Convergence's President and Chief Executive Officer, Dr. James Latty, specifically told York that York would "not be involved in the day to day financial operations" or the accounting of Convergence and its subsidiaries, which instead would be handled by an "experienced C.P.A."

Convergence had three main subsidiaries, one of which was CA MEMS, and each of these subsidiaries had its own controller to oversee its finances. For CA MEMS, that person was Miriam Wolverton, a C.P.A. Convergence, however, did not have its own financial accounting records or bank accounts, and for financial purposes, it was treated as one and the same with CA MEMS. Consequently, the controllers for the other two subsidiaries reported to Wolverton. York ranked higher than Wolverton as a formal

matter, but he nonetheless lacked the authority to issue direct orders to her, to set her salary, or to terminate her.

York had check-signing authority for the Company, and he kept the Company's checks in his office locked in a cabinet, to which only he had a key. However, it "was not York's function to, nor did he, originate any payments." Instead, Wolverton was in charge of keeping track of bills and making sure they were paid. When checks were required, Wolverton would prepare them, provide them to York along with related documentation, and York would sign them. If a question arose as to which bills to pay, Wolverton would raise the matter with Latty directly, with Latty and York jointly, or with York who then discussed it with Latty. Latty "had final approval of all payments," an authority he sometimes abused. However, shortly after beginning his employment in 2004, York learned that CA MEMS owed unpaid payroll taxes. York asked that Wolverton not make payroll payments unless the corresponding payroll tax deposits could also be made. After this 2004 deficiency was resolved, York did not become aware of any subsequent incidents of past-due payroll taxes until August 2007.

Under the Company's "Approval Matrix" for making payments, Wolverton had authority to make payroll tax payments of under $10,000, and York had similar authority up to $50,000. Each such payment that became due in 2007 for payroll taxes was under $10,000. Although Wolverton did not pay all of the taxes that were due for that year, the partial payments that were made were submitted electronically by her, using an electronic account to which York did not have the password.

Convergence encountered substantial financial trouble, and by December 21, 2007, it and its three main subsidiaries had ceased operations and were all in Chapter 7 bankruptcy proceedings. York resigned from Convergence and CA MEMS, effective December 31, 2007. The IRS subsequently contended that CA MEMS had failed to pay the payroll taxes due for three quarters of 2007 and two quarters of 2008. In 2010, the IRS assessed a penalty against York personally for the unpaid taxes, pursuant to I.R.C. § 6672(a).

In August 2016, York filed for Chapter 13 bankruptcy, and two months later the IRS submitted a proof of claim against him in the amount of $116,843.65.[1] York initiated an adversary proceeding against the IRS to dispute his liability for a penalty under I.R.C. § 6672(a). In his complaint, York asserted that he was not a "responsible person" for purposes of § 6672(a), which by its terms only applies to a "person required to collect, truthfully account for, and pay over any tax imposed by this title." I.R.C. § 6672(a). York also disputed whether the Company actually owed all of the taxes that the IRS had claimed were due.

The parties filed cross-motions for summary judgment. The bankruptcy court granted York's motion as to the remaining 2008 taxes in dispute, leaving only the payroll taxes from 2007 at issue. As to whether York was a responsible person subject to § 6672(a), the bankruptcy court concluded that "the record isn't clear enough on what actually has happened here." The court added that, despite

---

[1] Although this figure was initially disputed, the parties subsequently agreed that the amount properly at issue was only $15,119.34, and the IRS submitted an amended claim for that lesser amount.

the parties' agreement as to the underlying facts, the record did not establish "what exactly is the scope of [the CFO] title, what does it mean, is it required for signing SEC documents and the like." Because "[n]one of that is in the record," the bankruptcy court concluded that "there is still an open question in my mind as to whether [York] is a responsible person." Believing that "a trial would perhaps illuminate some of that information," the bankruptcy court denied both sides' summary judgment motions on the issue of whether York was a responsible person under § 6672(a).

Based upon his conclusion that a trial on the remaining amounts at issue was neither cost effective nor necessary, York filed a motion for entry of a judgment in favor of the IRS, in the amount that the IRS then requested, but with the condition that the judgment would be expressly "subject to York retaining his right to appeal" the denial of summary judgment. The IRS took no position as to whether such a reservation would be effective to allow York to appeal, but it otherwise did not oppose York's motion. The bankruptcy court, however, denied the motion.

Rather than proceed to trial, York and the IRS submitted a "stipulation for entry of judgment." The stipulation read in its entirety as follows:

> IT IS HEREBY STIPULATED AND AGREED that the Court may enter the following Judgment:
>
>> "IT IS HEREBY ORDERED, ADJUDGED AND DECREED:
>>
>> 1. The United States Claim [Claim 3], as amended, in the total amount of $15,119.34, is allowed.

2.  Plaintiff York is not entitled to a refund."

The bankruptcy court entered that judgment verbatim in June 2019.  York then timely appealed to the district court.

The district court concluded that it had jurisdiction under 28 U.S.C. §§ 158(a)(1) and (c)(1), which authorizes appeals to the district court from "final judgments, orders, and decrees."  *Id*. at § 158(a)(1).  As to the merits, the court affirmed the denial of summary judgment, concluding that "even with the facts stipulated to by the parties, material facts were still at issue."  York timely appealed the district court's order.

## II

We first address certain threshold questions of jurisdiction that we raised *sua sponte* in an order directing the parties to submit supplemental briefs.  *See Sahagun v. Landmark Fence Co.* (*In re Landmark Fence Co.*), 801 F.3d 1099, 1102 (9th Cir. 2015) (applying, in the bankruptcy context, the settled rule that courts may raise jurisdictional issues *sua sponte*).

Here, the "final" judgment that York appealed to the district court, and then to this court, was an adverse judgment that York stipulated should be entered against him on his adversary complaint in the bankruptcy court, and the sole issue he raises on appeal was whether the bankruptcy court correctly denied his earlier motion for entry of summary judgment in his favor.  That unique posture raises two potential concerns.  First, the ordinary rule is that "orders denying summary judgment do not qualify as 'final decisions' subject to appeal," *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011), and at least in some circumstances, such a denial

may not be "reviewable on appeal" from a final judgment either, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 955 n.4 (9th Cir. 2011) (citing *Ortiz*, 562 U.S. at 184). Second, as the Supreme Court has recently cautioned, a party's voluntary acceptance of an adverse judgment on the merits may not always be sufficient to permit review of an earlier interlocutory ruling. *See Microsoft Corp. v. Baker*, 582 U.S. 23, 26–27 (2017) (holding that plaintiffs who were refused class certification could not obtain review of that interlocutory order by voluntarily dismissing their individual claims with prejudice while reserving a right to revive them if the appeal of the class-certification denial was successful).

Having reviewed the parties' supplemental briefs, we conclude that we have jurisdiction to reach the merits of the bankruptcy court's denial of York's summary judgment motion. In explaining that conclusion, we begin by summarizing the general principles governing our jurisdiction in bankruptcy cases before turning, respectively, to whether the principles set forth in either *Ortiz v. Jordan* or *Microsoft Corp. v. Baker* preclude us from exercising jurisdiction to review the bankruptcy court's denial of summary judgment.

## A

Where, as here, a bankruptcy court order has been appealed to a district court, our jurisdiction is controlled by 28 U.S.C. § 158. Section 158(a) provides that district courts shall have jurisdiction "to hear appeals" (1) "from *final* judgments, orders, and decrees" of the bankruptcy courts; (2) from a specified category of interlocutory orders related to the filing of plans under Chapter 11; and (3) with leave of the district court, from any "other interlocutory orders and

decrees" of the bankruptcy court. *See* 28 U.S.C. § 158(a) (emphasis added).[2]   Section 158(d)(1), in turn, grants the courts of appeals jurisdiction over "appeals from all final decisions, judgments, orders, and decrees" entered by district courts under § 158(a). *See id*. § 158(d)(1).   The district court in this case did not grant leave to appeal an interlocutory order; instead, it rested its jurisdiction on the conclusion that the bankruptcy court had entered a final judgment that is reviewable under § 158(a)(1). Accordingly, under §§ 158(a)(1) and (d)(1), both the district court's jurisdiction and our jurisdiction turn on whether the bankruptcy court's judgment was sufficiently "final." *See Rains v. Flinn* (*In re Rains*), 428 F.3d 893, 901 (9th Cir. 2005) ("Under 28 U.S.C. § 158(d), appellate jurisdiction exists when the bankruptcy court order and the decision of the district court acting in its bankruptcy appellate capacity are both final orders." (citation omitted)).

As the Supreme Court has explained, the rules for determining finality "are different in bankruptcy." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015).   Because a "bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor," "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Id*. (citations omitted); *see also id*. at 501–02 (noting that the statute defining a district court's appellate jurisdiction in bankruptcy cases

_____

[2] Where, as in the Ninth Circuit, a Bankruptcy Appellate Panel ("BAP") has been established, the BAP would instead hear any such appeals unless one of the parties affirmatively elects to have the appeal heard by the district court. *See* 28 U.S.C. § 158(c)(1).  Here, York elected to have the appeal heard by the district court.

"authorizes appeals as of right not only from final judgments in cases but from 'final judgments, orders, and decrees . . . in cases and proceedings'" (citation omitted)). In particular, we have held that a bankruptcy court judgment "dispos[ing] of all claims raised in [an] adversary complaint" is sufficiently "final" for purposes of §§ 158(a)(1) and (d)(1) and that an "appeal from the district court's affirmance thereof [is] from a final judgment for jurisdictional purposes." *Caneva v. Sun Cmtys. Operating Ltd. P'ship* (*In re Caneva*), 550 F.3d 755, 759 n.1 (9th Cir. 2008). That conclusion makes sense because, had the adversary complaint been filed as a "stand-alone lawsuit[]," *Bullard*, 575 U.S. at 501, a judgment disposing of all of the claims in that suit would be considered final under the standards of 28 U.S.C. § 1291.

By allowing the IRS's amended claim for $15,119.34 and rejecting York's claim for a refund or for other relief disallowing the IRS's claim, the bankruptcy court's judgment in this case fully disposed of the claims raised by York's adversary complaint. And by affirming the bankruptcy court's judgment in full, the district court's judgment likewise disposed of all claims raised by York's adversary complaint. Accordingly, absent some reason to conclude otherwise, the judgment that has been appealed to us would appear to be sufficiently "final" for purposes of § 158(d)(1). We identified two such possible reasons earlier, and we address those issues in the ensuing two sections.

## B

In *Ortiz v. Jordan*, the Supreme Court held that, on appeal from a final judgment after a trial on the merits, an appellate court may not review a pretrial order denying summary judgment *if* that denial was based on the presence

of a disputed issue of material fact. *See* 562 U.S. at 183–84, 186–87. Neither *Ortiz*'s rule, nor the reasoning underlying it, precludes us from exercising jurisdiction to review the bankruptcy court's denial of summary judgment here.

As *Ortiz* explained, a determination that the record at summary judgment reveals a "genuine dispute as to a material fact" is, by its nature, interlocutory, 562 U.S. at 188 (simplified), and the resulting denial of summary judgment thereafter "retains its interlocutory character as simply a step along the route to final judgment," *id*. at 184. When that summary judgment denial is followed by a trial on the merits, however, "the *full record developed in court* supersedes the record existing at the time of the summary-judgment motion." *Id*. (emphasis added). As a result, any post-judgment appellate inquiry into the sufficiency of the evidence "must be evaluated in light of the character and quality of the evidence received in court" at the trial and not by examining the adequacy of the evidence in the record of the summary judgment motion. *Id*. As the Court explained, "[q]uestions going to the sufficiency of the evidence are not preserved for appellate review by a summary judgment motion alone." *Id*. at 190 (citation omitted). Rather, in the context of a jury trial, "challenges of that order 'must be renewed post-trial'" by invoking the procedures set forth in Federal Rule of Civil Procedure 50. *Id*. (citation omitted). Because Rule 50's procedures had not been properly invoked in *Ortiz*, the court of appeals in that case "had no warrant to upset the jury's decision," nor the resulting judgment, based on any issue concerning the sufficiency of the evidence. *Id*. at 192.

The Supreme Court recently reaffirmed this understanding of *Ortiz*'s rule—and that rule's limits—in *Dupree v. Younger*, 598 U.S. 729 (2023). As the Court

explained, *Ortiz* effectively created an exception to the "general rule" that, on appeal from a final judgment, a party may challenge any adverse interlocutory "rulings that led up to the judgment." *Id*. at 734 (citation omitted). *Ortiz*'s exception, the Court explained, rests on the fact that "[s]ome interlocutory district-court rulings, however, are unreviewable after final judgment *because they are overcome by later developments in the litigation*." *Id*. (emphasis added). A "denial of summary judgment on sufficiency-of-the-evidence grounds" is "one such ruling," because the facts whose sufficiency is being assessed are "develop[ed] and clarif[ied] as the case progresses from summary judgment to a jury verdict." *Id*. Accordingly, once the "complete trial record" has superseded the earlier "summary-judgment record," any error concerning the "district court's assessment of the facts based on the summary-judgment record becomes ancient history and is not subject to appeal." *Id*. (simplified).

But the same is not true, the Court held, when the earlier summary judgment ruling resolved "purely legal issues— that is, issues that can be resolved without reference to any disputed facts." *Id*. at 735. Although the factual record has indeed changed by virtue of the subsequent trial, nothing about those new facts supplants those earlier "pretrial legal rulings," which are therefore left "undisturbed." *Id*. Because a summary judgment ruling resolving purely legal issues is *not* overtaken by the subsequent development of a new factual record at trial, the rationale for *Ortiz*'s exception does not apply. *Id*. Accordingly, "these rulings follow the 'general rule' and merge into the final judgment, at which point they are reviewable on appeal." *Id*. at 735 (citation omitted).

Here, the crucial ingredient for triggering *Ortiz*'s exception to the ordinary merger rule is absent. If York's claim for relief against the IRS *had* proceeded to a bench trial, *then* the new factual record developed at that trial would have "wholly supplant[ed]" the summary-judgment record and the "pretrial factual rulings" made based on that earlier record. *Dupree*, 598 U.S. at 735. Thus, although the particular procedural requirements applicable to jury trials under Rule 50 would not have applied,[3] the trial record at that bench trial would still have "supersede[d]" the earlier summary judgment record. *Ortiz*, 562 U.S. at 184; *see also Dupree*, 598 U.S. at 734; *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) (applying *Ortiz* in the context of a bench trial). In that circumstance, *Ortiz*'s exception to the ordinary merger rule would apply and we would have been precluded from reviewing the bankruptcy court's determination that the summary judgment record presented a genuine issue for trial. Instead, in addressing the sufficiency of the evidence to support the ensuing judgment, we would have examined whether the evidence *at the bench trial* was sufficient to support whatever decision that trial produced. *See Eskanos & Adler, PC v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002) (noting that we review a bankruptcy court's factual findings for clear error); *Jamo v. Katahdin Fed. Credit Union* (*In re Jamo*), 283 F.3d 392, 401 (1st Cir. 2002) (noting that, in addition to reviewing factual

---

[3] *See* FED. R. BANKR. P. 9015(c) (Rule 50, which by its terms applies only to jury trials, generally applies in bankruptcy cases and proceedings); FED. R. BANK. P. 7052 (Federal Rule of Civil Procedure 52 generally "applies in adversary proceedings"); FED. R. CIV. P. 52(a)(5) (stating that, in a bench trial, a "party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings.").

findings under the clear error standard, a court of appeals may also consider de novo "the question of whether the evidence is legally sufficient to support particular findings").

But no such trial ever occurred in this case, because the parties instead stipulated to the entry of a judgment on the merits in favor of the IRS. Consequently, there was no "full record developed in court" at trial that could be said to "supersede[] the record existing at the time of the summary-judgment motion." *Ortiz*, 562 U.S. at 184; *see Dupree*, 598 U.S. at 735–36 ("[A]n appellate court's review of factual challenges *after a trial* is rooted in *the complete trial record*." (emphasis added)). The net result is that the rationale that *Ortiz* and *Dupree* gave for disallowing post-trial appellate review of fact-based summary judgment denials is not present here. There is therefore no basis for applying *Ortiz*'s exception to the otherwise applicable "general rule" that interlocutory orders "merge into the final judgment, at which point they are reviewable on appeal." *Dupree*, 598 U.S. at 735 (citation omitted); *see also Hall v. City of Los Angeles*, 697 F.3d 1059, 1070–71 (9th Cir. 2012) (noting the general rule that "[a]ll interlocutory rulings merge[] in the final judg[]ment" and are brought "within the jurisdiction of our court" on appeal from that judgment (citations omitted)).

The dissent contends that the *Ortiz* rule should nonetheless be extended to cover the very different situation presented here, in which a party has stipulated to the entry of an adverse judgment subject to an express reservation of the right to appeal it. According to the dissent, any such stipulation *necessarily* reflects an agreement as to the *truth* of the "factual predicates" that underlie that judgment. *See* Dissent at 41–42. That, in the dissent's view, means that "the parties have in effect stipulated to a *trial* record" and

have thereby "effectively developed the facts beyond the summary judgment record." *See* Dissent at 40 (emphasis added). The dissent's assumptions are factually and legally wrong. By stipulating to an adverse judgment subject to his express reservation of the right to appeal it, York did not thereby admit that the *correct* view of the ultimate facts is adverse to his position, nor did he stipulate to some new, unidentified set of underlying facts that go beyond the summary judgment record. No such agreement is reflected anywhere in the language of the parties' concise stipulation. Nor is any such agreement about the actual truth of the ultimate facts inescapably inherent in the parties' stipulation, as the dissent seems to think. On the contrary, that stipulation can be—and most naturally should be—read as simply reflecting the parties' agreement that a trier should be deemed to have rejected York's contentions *based on the existing record developed at summary judgment*—a record to which, as noted earlier, the parties did in fact stipulate. *See supra* at 6. The stipulation thus need not and should not be read as resting on an unknown and unstated hypothetical set of superseding facts. By instead effectively deeming that a trier has entered a judgment in the IRS's favor based on the agreed-upon summary judgment record (as the bankruptcy court held that a trier could do), the stipulation does not in any sense supersede that record, and the predicate for applying the *Ortiz* exception is absent here. And by leaving the summary judgment record intact, the stipulation preserves for appeal the question whether the bankruptcy

court correctly held that a judgment in the IRS's favor could *properly* be rendered on that record.[4]

## C

We next consider whether York's appeal runs afoul of the jurisdictional limitations recognized in *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017), and whether there are any remaining reasons that York's acquiescence in an adverse judgment bars this appeal. We answer both questions in the negative.

## 1

In *Baker*, the named plaintiffs sought to represent a putative class of owners of Xbox videogaming systems in a suit against Microsoft alleging that the Xbox was defectively designed. 582 U.S. at 33. After the district court struck the plaintiffs' class allegations, the plaintiffs sought permission to take an interlocutory appeal under Federal Rule of Civil Procedure 23(f), but this court denied that petition. *Id*. at 33–34. Rather than proceed to final judgment on their individual claims—which would then have allowed them, on appeal from that judgment, to challenge the earlier denial of class certification—the plaintiffs "moved to dismiss their case with prejudice." *Id*. at 35. In doing so, however, they

---

[4] Even setting aside the dissent's flawed and counterfactual effort to fit this case into *Ortiz*'s carefully limited exception, there is a further aspect of the dissent's position, which appears to rest on a broader premise. The dissent appears to contend that, regardless of whether the stipulation reflects a new, superseding factual record, the mere act of stipulating to an adverse judgment on the merits—even subject to an express reservation of the right to appeal it—*must* be understood *in law* as relinquishing *any* ability to contest those merits on appeal. As explained below, that position is inconsistent with our caselaw concerning appeals from stipulated judgments. *See infra* section II(C)(2).

"reserved the right to revive their claims should the Court of Appeals reverse the District Court's certification denial." *Id*. at 27. Although "Microsoft stipulated to the dismissal," it also expressly took the position that the plaintiffs' procedural gambit would not work and that they "would have 'no right to appeal' the order striking the class allegations after thus dismissing their claims." *Id*. at 35. We asserted jurisdiction over the plaintiffs' appeal and reversed the district court's order striking plaintiffs' class allegations. *Id*. at 35–36. The Supreme Court reversed, holding that the plaintiffs' "tactic does not give rise to a 'final decisio[n]' under § 1291." *Id*. at 37.

In holding that the plaintiffs' voluntary dismissal with prejudice did not give rise to a final judgment allowing review of the earlier class certification denial, the Court relied on two primary considerations. First, the plaintiffs' tactic "invites protracted litigation and piecemeal appeals," by placing "the decision whether an immediate appeal will lie" exclusively in the hands of the plaintiff and by creating the possibility (in the event of a remand of such an appeal) that the plaintiffs could "exercise that option more than once, stopping and starting the district court proceedings with repeated interlocutory appeals." *Id*. at 37–38. Second, by "allow[ing] indiscriminate appellate review of interlocutory orders" as of right, the plaintiffs' tactic would "severely undermine[]" the "careful calibration" reflected in Rule 23(f)'s specific rules, which require the discretionary permission of the court of appeals in order to obtain immediate appellate review of "inherently interlocutory" orders concerning class certification. *Id*. at 39–40 (citations omitted). The Court also noted that the plaintiffs' tactic would undermine "Rule 23(f)'s evenhanded" approach, which expressly allows both plaintiffs and defendants to

seek review of class certification decisions. *Id*. at 42. In contrast, the Court observed, the plaintiffs' "theory permits plaintiffs only, never defendants, to force an immediate appeal of an adverse certification ruling." *Id*. at 41. In light of these considerations, the Court held that "the voluntary dismissal essayed by [the plaintiffs] does not qualify as a 'final decision' within the compass of § 1291." *Id*. at 27.

Nothing comparable to that confluence of considerations is present here. York's request for a stipulated judgment and his ensuing narrowly focused appeal present no possibility of reopening the proceedings below, much less reopening them multiple times. If we consider York's appeal and agree with him that his motion for summary judgment should have been granted, then we would reverse and direct the entry of that different final judgment. But if we conclude that his motion was properly denied, then we would affirm the judgment in the IRS's favor. Either way, there will be no further proceedings below (beyond any additional ancillary matters that might be associated with entry of any final judgment). Thus, in contrast to *Baker*, there is no sense in which York's procedural device here could return him to his earlier interlocutory position in which the case was in a pretrial posture, with the potential for a trial on the merits. As a result, one of the essential ingredients that made the judgment in *Baker* nonfinal is missing here.[5]

---

[5] Moreover, York did not proceed by way of a simple request for voluntary dismissal of his adversary complaint with prejudice. *Cf*. FED. R. BANKR. P. 7041 (stating that, except for an adversary "complaint objecting to the debtor's discharge," the voluntary dismissal provisions of Federal Rule of Civil Procedure 41 apply in bankruptcy court). He instead proceeded by way of a proposed stipulated judgment that specified a disposition on the merits and that required the affirmative approval of the bankruptcy court.

The remaining crucial consideration identified by the *Baker* Court was that the plaintiffs' tactic in that case would "severely undermine[]" the court of appeals' gatekeeping role under Rule 23(f) and, relatedly, the Supreme Court's authority, by such rules, to allow specified categories of interlocutory appeals under 28 U.S.C. § 1292(e). 582 U.S. at 30–31, 40 (citation omitted). No such evasion or undermining of federal statutes or rules is presented here. The IRS argues that the stipulated judgment here would defeat the objectives of Federal Rule of Civil Procedure Rule 56—which generally applies in adversary proceedings in bankruptcy court, *see* FED. R. BANKR. P. 7056—by "undermin[ing] the district court's discretion to send a case to trial if the judge has doubt as to the wisdom of terminating the case before trial." *General Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (citation and internal quotation marks omitted). We reject this contention, because the IRS takes this comment out of context and thereby misconstrues its meaning.

Although its exact phrasing has varied over the years, Rule 56 has long been phrased in mandatory terms that *require* a court to grant summary judgment if the movant makes the necessary showing. *See* FED. R. CIV. P. 56(a) (stating that "[t]he court *shall* grant summary judgment if the movant shows" what the rule requires (emphasis added)); FED. R. CIV. P. 56(c) (2006 ed.) (stating that "[t]he judgment sought *shall* be rendered forthwith" if the requisite showing is made (emphasis added)). Although the word "shall" was changed to "should" in 2007 as part of an overall restyling of the federal rules that was "intended to be stylistic only," *see* FED. R. CIV. P. 56, advis. comm. note (2007 amend.), it was promptly changed back in 2010. As the Advisory Committee explained, the 2007 change had been a mistake:

"Eliminating 'shall' created an unacceptable risk of changing the summary-judgment standard. Restoring 'shall' avoids the unintended consequences of any other word." *See* FED. R. CIV. P. 56, advis. comm. note (2010 amend.).

Given Rule 56's mandatory language, if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, the court lacks "discretion" to insist that, in defiance of Rule 56, a trial will be held anyway. As the Supreme Court has explained, "the plain language" of Rule 56 "*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). Against this backdrop, our comment in *General Signal*—contrary to what the dissent contends—did not signify endorsement of any such non-existent "discretion" to defy Rule 56 but instead used that term more loosely in recognizing that, although summary judgment motions ultimately raise questions of law reviewed de novo, they often involve fact-intensive evaluations as to whether the demanding standards of Rule 56 have been met. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986) (reaffirming that, while "Rule 56(c) provides that the trial judge shall then grant summary judgment" if the requisite showing is made, courts should act "with caution" in granting summary judgment and should deny summary judgment when, under the Rule's standards, "the better course would be to proceed to a full trial"). And, as *Anderson* notes, *see* 477 U.S. at 250 n.5, Rule 56 motions also may require the preliminary exercise of discretionary judgment as to whether there has been a sufficient

opportunity for discovery at the time the motion is made. *See* FED. R. CIV. P. 56(d). Here, neither side contended that more discovery was needed, and the IRS is therefore wrong in suggesting that the bankruptcy court had discretion to deny York's summary judgment motion even if York made the showing required by Rule 56. The stipulated judgment in this case therefore did not contravene or undermine any policy of Rule 56.

The parties have not identified any other statutory or rules-based policy that would be undermined by the stipulated judgment here. To be sure, York could have asked the district court to hear a discretionary appeal of the denial of his summary judgment motion under 28 U.S.C. § 158(a)(3), and in that sense his request for a stipulated judgment arguably evaded the district court's discretionary gatekeeping authority. But in contrast to the genuinely interlocutory appeal authorized by § 158(a)(3), York's appeal after the stipulated judgment creates no possibility that he could return to his earlier, pretrial interlocutory posture. *See supra* at 21. The opposite was true of the *Baker* plaintiffs' evasion of Rule 23(f), and it was that critical feature that "severely undermined" "Rule 23(f)'s careful calibration." 582 U.S. at 40 (citation omitted). York's appeal thus does not resemble an unauthorized interlocutory appeal; on the contrary, it has all the features of an appeal from a "final" judgment. *Cf. Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 955 (9th Cir. 2018) (stating that "a voluntary dismissal of remaining claims can render the earlier interlocutory order appealable, so long as the discretionary regime of Rule 23(f) is not undermined").

Our recent decision in *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124 (9th Cir. 2022), confirms that *Baker* does not preclude our exercise of jurisdiction here. In

*Trendsettah*, the district court entered judgment on a jury verdict in favor of plaintiff Trendsettah, but thereafter the district court granted the defendant's motion to set aside that judgment under Federal Rule of Civil Procedure 60(b). *Id*. at 1128–30. After Trendsettah unsuccessfully sought reconsideration of that Rule 60(b) ruling and certification of an appeal under 28 U.S.C. § 1292(b), Trendsettah "filed a motion to voluntarily dismiss its claims with prejudice to take an immediate appeal of the district court's orders." *Id*. at 1130. The district court granted that motion, and Trendsettah appealed. *Id.* We rejected the defendant's argument that this tactic did not produce a final, appealable judgment under *Baker*. We explained that, unlike the plaintiffs in *Baker*:

> Trendsettah is not attempting to take an appeal midstream, such that success on appeal would allow it to continue litigating its claims in a preferred posture or forum. Trendsettah's claims have already been litigated and a final decision on those claims has been reached. *Thus, however we decide this appeal, the case will be over*—either the jury's prior verdict will be reinstated or the district court's dismissal of Trendsettah's claims with prejudice will stand.

*Id*. at 1132 (emphasis added). We further noted that, unlike *Baker*, Trendsettah's appeal would not undermine any policy set forth in statutes or rules. *Id*. at 1131–32 (similarly distinguishing *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115 (9th Cir. 2020), in which the plaintiff attempted to use voluntary dismissal to evade the statutory bar on appealing orders compelling arbitration). And we also

concluded that the district court's "involvement in the voluntary dismissal" weighed in favor of the finality of the judgment. *Id*. at 1132 (quoting *Galaza v. Wolf*, 954 F.3d 1267, 1272 (9th Cir. 2020)). As our earlier discussion makes clear, each of these reasons for distinguishing *Baker* is applicable here: regardless of how we rule on the appeal, the case is over and will not be revived in the lower courts; York is not evading any statutory or rules-based policy; and the bankruptcy court agreed to enter the stipulated judgment. *See supra* at 21–26 & n.5. Under *Trendsettah*, *Baker* poses no obstacle to our jurisdiction here.

**2**

The last question is whether there is any remaining sense in which York's acquiescence to the adverse judgment precludes his appeal. The answer is no.

"The normal rule is that a party cannot appeal from an order which it consented to have entered against it." *Christian Sci. Reading Room Jointly Maintained v. City & Cnty. of San Francisco*, 784 F.2d 1010, 1017 (9th Cir.), *as amended*, 792 F.2d 124 (9th Cir. 1986). By agreeing to the entry of an adverse judgment, a party necessarily gives up the ability to raise on appeal "any errors that may be assigned which were in law waived by the consent." *Pacific R.R. v. Ketchum*, 101 U.S. 289, 295 (1880). But we have held that the normal rule against appealing a consent judgment does not apply where the objective circumstances make "clear" that the party acquiescing in the adverse consent judgment "intended to preserve its right [to] appeal" an earlier adverse order that merges into that judgment and that, if reversed on appeal, would require vacatur or reversal of that judgment. *Christian Sci. Reading Room*, 784 F.2d at 1017. That is the case here.

The IRS affirmatively—and correctly—concedes that the record makes unambiguously clear that York's consent to the entry of the adverse judgment in this case was subject to his express reservation of any rights to appeal he retained. *Cf. Gatto v. Comm'r*, 1 F.3d 826, 828 (9th Cir. 1993) (declining to "entertain the Gattos' argument that their consent was conditioned upon the oral assurance of the Commissioner's counsel that they would retain the right to appeal" when nothing in the record of the district court supported that assertion, which was "raised for the first time on appeal"); *Tapper v. Comm'r*, 766 F.2d 401, 403 (9th Cir. 1985) (holding that the record failed to show that the appellants' consent to an adverse judgment did *not* extend to the issues sought to be raised on appeal).

Moreover, contrary to what the dissent suggests, this is not a case in which York's reservation of a right to appeal the consent judgment must be deemed "in law" to be fundamentally inconsistent with his consent and thereby *necessarily* waived by it. *Pacific R.R.*, 101 U.S. at 295. York's position was that the case should have ended in his favor at summary judgment based on the parties' agreement as to the underlying facts. It is neither logically nor legally inconsistent with that position to say that, if the bankruptcy court was wrongly going to insist on continued litigation of the matter, the outcome of that fundamentally flawed endeavor should be deemed, in accordance with the bankruptcy court's order, to have been an adverse judgment based on those same agreed-upon facts. *See*, *e.g.*, *Comsource Indep. Foodservice Cos., Inc. v. Union Pac. R.R. Co.*, 102 F.3d 438, 441–42 (9th Cir. 1996) (reviewing, on appeal from a stipulated judgment on the merits, the district court's earlier denial of a summary judgment motion that had sought dismissal based on the statute of limitations). To

be sure, *had* those proceedings actually occurred, they would then have triggered the *Ortiz* rule and barred review of the earlier summary judgment denial, but as we explained earlier, there is no predicate for invoking that rule when no such trial actually occurs. And as our discussion of *Baker* makes clear, there is no basis here for concluding that York's reservation of a right to appeal the earlier summary judgment denial is so contrary to the policies of the statutes and federal rules that, despite that reservation, he must be deemed in law to have forfeited it.[6]

The dissent insists that *Comsource* is distinguishable on this point, but that is wrong. In *Comsource*, a food service company sued the defendant railroad in connection with a shipment of produce that was damaged while being transported by the railroad. 102 F.3d at 440–41. After the district court denied the railroad's motion seeking summary judgment on statute of limitations grounds, the railroad ultimately stipulated to a judgment in the plaintiff's favor,

---

[6] This situation also differs from one in which a plaintiff effectively attempts to bait the district court into committing error—*e.g.*, by provoking the court to dismiss the case for failure to prosecute—so that, in the ensuing appeal challenging the dismissal for failure to prosecute, the plaintiff (if successful in setting aside that independent ground for dismissal) can then also seek review of wholly *unrelated* issues earlier in the case. *Cf. Ash v. Cvetkov*, 739 F.2d 493, 497–98 (9th Cir. 1984) (affirming dismissal for failure to prosecute and declining to consider additional interlocutory rulings, even though dismissal was without prejudice and issues might arise again); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 (9th Cir. 2002) (describing *Ash* as a case involving "unquestionably a manipulation of appellate process"); *compare United States v. Procter & Gamble Co.*, 356 U.S. 677, 680–81 (1958) (holding that, although Government suggested dismissal as a sanction for its refusal to comply with a challenged court order, Government could challenge that underlying order in ensuing appeal of dismissal).

while reserving its right to appeal the denial of summary judgment.  *Id*. at 441.  We held that the denial of summary judgment was properly reviewable on the railroad's appeal from the stipulated judgment, because the railroad had expressly "reserved the right to appeal the denial of summary judgment." *Id*. at 442 (citing *Smigiel v. Aetna Cas. & Surety Co.*, 785 F.2d 922 (11th Cir. 1986)).  According to the dissent, *Comsource* does not apply here because the stipulated judgment in *Comsource* assertedly involved only the railroad's acquiescence in an adverse "*merits* determination," and it therefore did not entail an implicit stipulation to adverse facts *concerning the statute of limitations*.  *See* Dissent at 43 (emphasis added).  The dissent's proffered distinction is factually incorrect, as our opinion in *Comsource* makes clear.  In reviewing the denial of summary judgment to the railroad, we expressly addressed whether there was a *triable issue of material fact* with respect to the statute of limitations issue and ultimately held that there was.  *Id*. at 444.  Under the dissent's theory that a stipulation to an adverse judgment *necessarily* stipulates to the *correctness* of all of the underlying facts necessary to support it, the railroad in *Comsource* necessarily stipulated to the facts needed to defeat its summary judgment defense and therefore could not challenge on appeal whether there was in any respect a triable issue of material fact as to its limitation defense.  Nonetheless, contrary to the dissent's position, *Comsource* proceeded to squarely address that very question whether there was a triable issue of material fact that could be resolved in the plaintiff's favor.

Finally, this is not a case in which York's acquiescence to the stipulated judgment destroys the adversity required to establish the "'case' or 'controversy'" required by Article

III.  *See Baker*, 582 U.S. at 44–45 (Thomas, J., concurring in the judgment).  York did not acquiesce to a judgment that necessarily forfeited all relief, thereby leaving the parties non-adverse.  On the contrary, as we have explained, York's consent to the judgment was subject to his reservation of whatever right he had to appeal the court's earlier refusal to enter a different judgment.  A favorable ruling on that substantive issue in this ensuing appeal would require vacatur of that stipulated judgment and entry of the different judgment that had been denied to York.  That creates sufficient adversity to allow us to decide whether, as a matter of statute, York has a right to such an appeal and, if he does, to decide its merits.  Because York otherwise does have a right to such an appeal, Article III interposes no obstacle to our proceeding to the merits.

# III

We turn then, at last, to the merits of the bankruptcy court's denial of summary judgment.  "We review de novo the district court's judgment in the appeal from the bankruptcy court, and apply the same de novo standard of review the district court used to review the bankruptcy court's" ruling denying summary judgment.  *Suncrest Healthcare Ctr. LLC v. Omega Healthcare Investors, Inc.* (*In re Raintree Healthcare Corp.*), 431 F.3d 685, 687 (9th Cir. 2005).  To be entitled to summary judgment against the IRS, York had to show that, viewing the summary judgment record in the light most favorable to the IRS, a rational trier of fact could not "reasonably find" in the IRS's favor under the "governing law."  *Anderson*, 477 U.S. at 254.  The bankruptcy court correctly concluded that York had failed to make that showing.

## A

The IRS's claim against York rested on § 6672(a) of the Internal Revenue Code, which provides, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

I.R.C. § 6672(a). Among the taxes that a person might be required to collect and then pay over are "federal income and social security taxes" that must be withheld by employers "from the wages of their employees." *Purcell v. United States*, 1 F.3d 932, 936 (9th Cir. 1993); *see also* I.R.C. § 3402 (describing withholding requirements). A "person required to collect, truthfully account for, and pay over" such a tax, *see* I.R.C. § 6672(a), "includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs," *id*. § 6671(b). Such an individual is commonly referred to as a "responsible person," although the statute itself does not employ that phrase. Using that shorthand, we can summarize the statutory criteria for imposing such a penalty on an individual such as York as follows: (1) the individual qualifies as a "responsible person"; (2) the individual

"fail[ed] to collect" or "account for and pay over such tax";
and (3) the individual acted willfully in doing so.  I.R.C.
§ 6672(a); *see also Purcell*, 1 F.3d at 936.

Once such a penalty has been assessed, the individual
challenging it "bears the burden of proving by a
preponderance of the evidence" that one or more of these
required elements "is not present."  *United States v. Jones*,
33 F.3d 1137, 1139 (9th Cir. 1994) (citation omitted).
Accordingly, to defeat the IRS's assessment of penalties
against York (which was the basis of its claim in
bankruptcy), York had to show that, at least as to one such
element, no reasonable trier of fact could find in the IRS's
favor.  York does not dispute that the relevant 2007 payroll
taxes were not paid over, but he does contend that no rational
trier of fact could find that he was a "responsible" person or
that he had acted willfully.  As explained in the next two
sections, we disagree on both counts.

## B

In identifying the person "responsible" for the payment
of withholding taxes, we have said that we look to whether
a person "had the final word as to what bills should or should
not be paid, and when."  *Purcell*, 1 F.3d at 936 (quoting
*Wilson v. United States*, 250 F.2d 312, 316 (9th Cir. 1958)).
But our use of the word "final" is a bit of a misnomer,
because we have clarified that, in this context, "[t]he final
word does not mean 'final'" in the sense of the ultimate
authority in the corporate hierarchy.  *Jones*, 33 F.3d at 1139.
Rather, the "crucial examination is whether a person had the
effective power to pay taxes," such that the person could
have made a decision that the taxes be paid.  *Purcell*, 1 F.3d
at 937 (citations and internal quotation marks omitted).  If
"the scope and nature of an individual's power to determine

how the corporation conducts its financial affairs" gives that individual "authority to pay or to order the payment of delinquent taxes," then that person is a responsible person under § 6672(a). *Id*. What matters is that the "individual had the *authority* required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact." *Id*. (emphasis added); *see also Jones*, 33 F.3d at 1139. So long as that standard is met, it is "irrelevant" that "an individual's day-to-day function in a given enterprise is unconnected to financial decision making or tax matters." *Purcell*, 1 F.3d at 937.

We conclude that, under this standard, a reasonable trier of fact could readily find that York was a responsible person. The summary judgment record included evidence showing that York was the CFO of the Company; that he had the authority to sign checks for the Company; that he had physical custody of the Company's checks; and that the Company's "Approval Matrix" for financial transactions expressly stated that York had the authority to pay taxes up to $50,000. *See supra* at 7. Relying on this evidence, a trier of fact could reasonably conclude that York had sufficient "significant control over the corporation's financial affairs" that he could have paid or ordered the payment of the delinquent taxes. *Purcell*, 1 F.3d at 937. Indeed, when a prior payroll tax deficiency problem had arisen in 2004, York reported to the Company's Board of Directors concerning the matter, took steps to resolve the deficiency, and told Wolverton that no payroll checks were to be paid "unless the payroll taxes would have been paid over." Because "the duty to ensure that withheld employment taxes are paid over [to the IRS] flows from the authority that

enables one to do so," *id.*, York could reasonably be found, on this record, to be a responsible person.

In arguing to the contrary, York emphasizes that, functionally, his check-writing authority was "ministerial"; that he was "not authorized to make the decisions as to which bills would get paid"; that Wolverton exercised the day-to-day responsibility for making tax payments; and that Latty, as president and CEO, "had final approval of all payments." York relies further on the fact that his duties were limited under the bylaws, which provided that the CFO "was to act under and subject to the direction of the President, and was only authorized to disburse funds 'as may be ordered by the President or the Board of Directors.'" But none of these points, individually or collectively, would necessarily preclude a reasonable trier of fact from concluding that York had the requisite authority.

The Board of Directors had approved the "Approval Matrix" that gave both York and Wolverton authority to pay taxes up to specified amounts, and York conceded below that this matrix gave *Wolverton* the authority to pay tax and payroll-related obligations, "without the need to secure other approvals." A rational factfinder could conclude that the matrix gave *York* comparable authority. Moreover, the fact that Wolverton typically handled such matters on a day-to-day basis does not establish that York lacked such authority. "More than one individual may be a responsible person within a given entity," *see Brounstein v. United States*, 979 F.2d 952, 955 (3d Cir. 1992), and "liability attaches to all those under the duty set forth in the statute," *Purcell*, 1 F.3d at 937 (quoting *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989)). In assessing whether York is one such person, what matters is the "scope and nature of [his] power to determine how the corporation conducts its financial

affairs," and *not* whether such payments fall within his "day-to-day function" in the Company. *Purcell*, 1 F.3d at 937; *see also id.* (stating that, so long as the person has the requisite control, it is irrelevant "whether he exercised such control in fact"). For the reasons we have explained, York could reasonably be found to have the relevant authority within the Company, even if he typically did not initiate payments. *Cf. Alsheskie v. United States*, 31 F.3d 837, 839 (9th Cir. 1994) (holding that district court did not clearly err in finding that Alsheskie was not a "responsible person" given that controls arising from the company's unique financing arrangement "*precluded* Alsheskie from paying the Corporation's tax obligations" (emphasis added) (citation omitted)).

York is likewise wrong in contending that Latty's ultimate authority to make final decisions concerning payments—an authority that he often abused—precludes a finding that York had "significant control over the corporation's financial affairs." *Purcell*, 1 F.3d at 937. As we have explained, *see supra* at 32–33, our cases have not referred to "final" authority to make payments in the narrow sense of referring only to the person at the apex of corporate decisionmaking; instead, the question is whether the person possesses the necessary "authority to pay or to order the payment of delinquent taxes." *Purcell*, 1 F.3d at 937. Given that a rational trier of fact could conclude that the Approval Matrix gave York authority to pay the delinquent taxes without the need for Latty's advance approval, York's remaining arguments on this score necessarily rest on the premise that, as a *functional* matter, York would have felt obligated to run the matter by his tyrannical CEO. But the fact that York might have hesitated to "exercise[] such control in fact," provides no basis for him to evade the responsibility that came from his authority within the

Company.  *Id*.  Indeed, even if Latty had purported to instruct York not to pay the taxes, a reasonable trier of fact could still find, on this record, that York was a responsible person.  *See id*. ("Instructions from a superior not to pay taxes do not take a person otherwise responsible under section 6672(a) out of that category." (simplified)).

## C

We further conclude that a trier of fact could reasonably determine that York acted willfully.

We have defined willfulness, for purposes of § 6672, as "a voluntary, conscious and intentional act to prefer other creditors over the United States."  *Purcell*, 1 F.3d at 938 (quoting *Davis v. United States*, 961 F.2d 867, 871 (9th Cir. 1992)).  "An intent to defraud the Government or other bad motive need not be proven." *Rykoff v. United States*, 40 F.3d 305, 307 (9th Cir. 1994).  Indeed, "conduct motivated by reasonable cause, such as meeting the payroll, may be 'willful.'" *Phillips v. U.S. I.R.S.*, 73 F.3d 939, 942 (9th Cir. 1996).  "[F]or nonpayment to be willful there must be either knowledge of nonpayment or reckless disregard of whether the payments were being made." *Teel v. United States*, 529 F.2d 903, 905 (9th Cir. 1976).  Under these standards, a factfinder could reasonably conclude that York acted willfully.

In arguing to the contrary, York emphasizes that it was undisputed that he did not have actual knowledge of the payroll tax deficiency until August 2007, by which time, he contends, Latty controlled all payment decisions.  But we have held that willfulness may be established within the meaning of § 6672(a) even in the absence of actual knowledge of the tax deficiency: "'[R]eckless disregard' of whether the taxes are being paid over, as distinguished from

actual knowledge of whether they are being paid over, may suffice to establish willfulness." *Phillips*, 73 F.3d at 942; *see also Teel*, 529 F.2d at 905. Here, York was aware that the Company had previously failed to pay over payroll taxes in 2004. He reported on that subject to the Board of Directors and worked with the IRS to resolve the matter in 2005. York also testified that, throughout his tenure, the Company "always had financial difficulty" and "lived hand to mouth." Those problems became worse in 2007, and by June of that year, the Company stopped paying York, Latty, and Wolverton. A rational trier of fact could conclude from this evidence that York "preferred ignorance," *Sorenson v. United States*, 521 F.2d 325, 329 (9th Cir. 1975), and that he acted in reckless disregard of whether the payroll taxes were being paid over to the IRS. *See Phillips*, 73 F.3d at 942 (stating that, where the company's chief executive "knew that the controller had once failed in the past to pay over the withholding taxes, and the chief executive did nothing to prevent a recurrence, that was willfulness as a matter of law" (citing *United States v. Leuschner*, 336 F.2d 246, 248 (9th Cir. 1964))). And a reasonable factfinder could further conclude that, once York acquired actual knowledge that the taxes were not being paid, he willfully failed to take any steps to pay them or to see that they were paid. *See Leuschner*, 336 F.2d at 248 (director's "complete failure to do anything to see that [controller], or he himself, performed that duty, is, we think, as a matter of law, a 'voluntary, conscious and intentional' failure").

## IV

Because the bankruptcy court correctly denied York's summary judgment motion, the district court properly affirmed the judgment against York.

**AFFIRMED.**

BERZON, Circuit Judge, dissenting:

Richard York seeks to appeal the bankruptcy court's fact-based denial of summary judgment.  But after the summary judgment decision, York agreed to a stipulated final judgment in favor of his adversary, the Internal Revenue Service ("IRS").   In my view, the parties' agreement that the IRS would prevail at trial supersedes the bankruptcy court's earlier decision to deny summary judgment and send the case to trial.  As a result, the summary judgment denial is yesterday's news, and York may not now appeal it.  I therefore respectfully dissent.

1. A fact-based denial of summary judgment is a procedural ruling that does not resolve any legal dispute or entail any liability determination.  "[T]he denial of a motion for a summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim.  It is strictly a pretrial order that decides only one thing—that the case should go to trial."  *Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 25 (1966).

Given their nature, denials of summary judgment on factual grounds are a species of interim rulings that are "unreviewable after final judgment because they are overcome by later developments in the litigation." *Dupree v. Younger*, 598 U.S. 729, 734 (2023).  "Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion."  *Ortiz v. Jordan*, 562 U.S. 180, 184

(2011); *see also Dupree*, 598 U.S. at 734. At that point, "a district court's assessment of the facts based on the summary-judgment record becomes 'ancient history and [is] not subject to appeal.'" *Dupree*, 598 U.S. at 734 (citation omitted). After a trial, the order denying summary judgment "retains its interlocutory character as simply a step along the route to final judgment." *Ortiz*, 562 U.S. at 184. The bottom line is that, in contrast to denials of summary judgment based on matters of law, "factual issues addressed in summary-judgment denials are unreviewable on appeal." *Dupree*, 598 U.S. at 735.

2. The majority's decision to the contrary stresses the "full record" language in *Ortiz*, 562 U.S. at 184, and *Dupree*, 598 U.S. at 734, concluding that so long as there was no superseding trial record that could be said to displace the earlier summary judgment record, the earlier fact-based denial of summary judgment merges into the final judgment and, ordinarily, can be reviewed on appeal. *See* Majority Op. at 16–17. The majority reasons that because there was no trial here, there was no superseding trial *record*, and the summary judgment denial is therefore appealable. *Id*.

The majority's conclusion that a fact-based summary judgment denial is reviewable so long as there is no actual trial record has some basis in snippets of language in *Ortiz* and *Dupree*. But, after careful consideration of those two Supreme Court opinions and of the finality principle underpinning them, I am in the end unpersuaded by the majority's conclusion that we can review the denial of summary judgment on appeal from the stipulated judgment.

On my reading, *Dupree*, interpreting *Ortiz*, draws a firm line between fact-based denials of summary judgment and law-based denials. As *Dupree* explained, although "factual

issues addressed in summary-judgment denials are unreviewable on appeal, the same is not true of purely legal issues—that is, issues that can be resolved without reference to any disputed facts." 598 U.S. at 735. Law-based summary judgment denials are appealable after a final judgment "[b]ecause a district court's purely legal conclusions at summary judgment are not 'supersede[d]' by later developments in the litigation." *Id.* (citation omitted); *see also id.* at 736 ("A district court's resolution of a pure question of law . . . is unaffected by future developments in the case.").

*Dupree* and *Ortiz* make clear that a fact-based summary judgment denial is not appealable because it is a type of ruling that is " 'supersede[d]' by later developments in the litigation," without specifying that the later development must be an actual trial. *Dupree*, 598 U.S. at 735 (quoting *Ortiz*, 562 U.S. at 184); *see also id.* at 734. The parties' stipulated judgment is precisely such a development.

The bankruptcy court, in denying summary judgment, issued no order determining liability. Pursuant to that summary judgment ruling, neither party was yet entitled to judgment, and, in the ordinary course, a trial would have been necessary to determine liability. The parties, via their stipulated judgment, established that the record at trial, were there one, would result in a final judgment for the IRS. By entering into that stipulation, the parties effectively developed the facts beyond the summary judgment record. *See Dupree*, 598 U.S. at 734. The parties did so—that is, "superseded" the summary judgment denial "by later developments in the litigation," *id.*—when they stipulated

that the result of that trial would be that the IRS was entitled to judgment.[1]

It is true, of course, that there was no actual trial and the stipulated judgment does not detail the factual determinations upon which it is premised. But York's consent to the judgment "is equivalent to an admission . . . on the record that the facts exist on which the decree rests." *Pac. R.R. v. Ketchum*, 101 U.S. 289, 296 (1879). And we know that the necessary factual predicates for an IRS judgment would have to be that (1) York qualifies as a "responsible person" for purposes of collecting and paying the tax; (2) he "fail[ed] to collect" or "account for and pay over [the] tax"; and (3) he acted willfully in doing so. *See* I.R.C. § 6672(a); Majority Op. at 8–9, 31–32. The stipulation, therefore, is necessarily based on specific factual predicates that the district court ruled could not be determined on the summary judgment record.

In light of the implicitly stipulated findings, the parties' agreement as to the outcome of a hypothetical trial, just like an actual trial, renders "a district court's factual rulings based on the obsolete summary-judgment record . . . useless." *Dupree*, 598 U.S. at 736. By determining the factual issues left open by the denial of summary judgment, the stipulation, together with the underlying factual premises it necessarily subsumes, supersedes the bankruptcy court's earlier decision to send the case to trial by specifying the result of that trial. Accordingly, under *Ortiz* and *Dupree*, the

---

[1] The majority insists that the stipulation, rather than reflecting the outcome of a hypothetical trial, instead reflects the parties' agreement that on the same stipulated record considered on the summary judgment motions, the IRS would prevail. But as I later explain, if that is the case, then York has conceded the merits of his appeal. *See infra* at 8-9.

earlier procedural ruling has lapsed and is not now reviewable.

That the parties have chosen not to develop a detailed record underlying the implicitly stipulated factual findings cannot render the earlier summary judgment ruling appealable. Trial findings supersede an earlier fact-based summary judgment decision regardless of whether the trial transcript is in the appellate record. *See Jones v. City of Santa Monica*, 382 F.3d 1052, 1057 (9th Cir. 2004) ("By failing to provide a trial transcript, [the appellant] may not avoid our practice of not reviewing the denial of summary judgment when there has been a factual trial."). Here, the parties have in effect stipulated to a trial record entitling the IRS to judgment; that they did not develop that record in an actual trial is irrelevant to whether the denial of summary judgment remains of any significance.

In sum, the denial of summary judgment determined that there were factual issues that had to be resolved by later proceedings, and they were so resolved—through a stipulation as to the ultimate findings of fact. Under *Ortiz* and *Dupree*, the earlier ruling no longer has any significance to the final judgment in this case and is not appealable.

3. Additionally, given that York has necessarily stipulated to the factual predicates supporting judgment for the IRS, I disagree with the majority's assertion that York's stipulation should not be deemed to be an abandonment of his challenge to the summary judgment denial. *See* Majority Op. at 27–28 (citing *Comsource Indep. Foodservice Cos. v. Union Pac. R.R. Co.*, 102 F.3d 438, 442 (9th Cir. 1996)). A party whose assertion of error on appeal is inconsistent with a consent judgment is deemed to have waived the assertion of that error on appeal. *See Pac. R.R.*, 101 U.S. at 295;

Majority Op. at 26. By agreeing to the stipulation, York voluntarily agreed to factual findings in favor of the IRS on the same fact questions at issue in his summary judgment appeal. Yet, for purposes of his summary judgment appeal, he takes a position on those fact issues at odds with the position to which he has stipulated.

In concluding that the stipulation is not inconsistent with York's position on appeal, the majority relies on *Comsource*, a case in which the parties stipulated to final judgment on the merits after the district court issued a summary judgment order rejecting a statute of limitations defense. *Comsource*, 102 F.3d at 441; *see* Majority Op. at 27–29. The parties in *Comsource* stipulated to a final merits judgment in the plaintiff's favor, allowing the defendant to appeal the logically prior and factually distinct statute of limitations ruling. *See id*. at 441–42. The defendant's reservation of the right to appeal the limitations issue was not inconsistent with the position taken in the stipulation, because the appeal challenged the limitations ruling only, not the separate merits determination stipulated to after the district court resolved the limitations issue.[2]

_____

[2] In responding to my discussion of *Comsource*, the majority emphasizes that the stipulation in that case must have "entail[ed] an implicit stipulation to adverse facts *concerning the statute of limitations*," Majority Op. at 29 – a point relevant to the question whether the summary judgment record was superseded by a later-developed record under *Ortiz* and *Dupree*. But *Comsource* was decided long before *Ortiz* and *Dupree*, and so provides no support for the majority's conclusion concerning the application of the rule set forth in those cases. *Compare Comsource*, 102 F.3d at 442 ("a denial of a summary judgment order is appealable after the entry of a final judgment"), *with Dupree*, 598 U.S.

Here, in contrast, the bankruptcy court's summary judgment order did not pre-determine any issue independent of the one that formed the basis for the parties' stipulation. Instead, York elected to stipulate to factual predicates inconsistent with the position he now asserts on appeal. The majority cites no case in which a party has been permitted to appeal after stipulating to a judgment factually interwoven, as here, with the issues sought to be appealed.

In the majority's view, the stipulation reflects York's agreement that, *based on the undisputed summary judgment record*, the IRS would prevail at the bench trial. Majority Op. at 27. If that is the case, then York's agreement amounts to a concession that the IRS is entitled to judgment on the summary judgment record – a position directly inconsistent

at 735 ("factual issues addressed in summary-judgment denials are unreviewable on appeal").

In any event, I addressed *Comsource* because it was cited in support of the majority's conclusion that York should not be deemed to have waived his position on appeal, *see* Majority Op. at 27–28. As to that issue, the district court in *Comsource* decided the statute of limitations question against the appellant on a legal ground, concluding that under the applicable law, for the one-year limitations period to apply, the appellant was required to first offer the default two-year limitations period as an option; because the appellant had not done so, the district court denied the appellant's summary judgment motion. *Comsource*, 102 F.3d at 441–42. The parties' stipulation to a merits judgment while reserving an appeal of the district court's legal ruling on the statute of limitations was not logically inconsistent. That the court of appeals in *Comsource* subsequently chose to affirm the district court's denial of summary judgment on a different ground – that there was a fact dispute on the question whether the appellant provided adequate notice that a one-year limitations period would apply – is irrelevant to whether the appellant's stipulation was inconsistent with its reservation of the statute of limitations issue at the time it was made. It was not, unlike the situation here.

with the position he now asserts on appeal. Under the majority's approach, York has reserved his right to appeal, but he has conceded the merits of that appeal.

4. My conclusions are reinforced by the practical concern that the majority's decision undermines the trial court's discretion to send a case to trial in the face of an underdeveloped record. *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500 (9th Cir. 1995), explained that reviewing a fact-based summary judgment denial "would . . . undermine the district court's discretion to send a case to trial 'if the judge has doubt as to the wisdom of terminating the case before trial.' " *Id.* at 1507 (citation omitted); *see also Jones*, 382 F.3d at 1057 (declining to review a fact-based summary judgment denial and explaining in part that "the preliminary ruling at summary judgment . . . may have been the result of some doubt on the part of the trial judge whether it was wise to terminate the case at an early stage").

The Supreme Court has long recognized that the trial court may "deny summary judgment . . . where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (citing *Kennedy v. Silas Mason Co.,* 334 U.S. 249 (1948)). In keeping with this principle, we have held that although Federal Rule of Procedure 56(c) speaks in mandatory terms, an appellate court may reverse a grant of summary judgment and remand a case for trial where the "record[] ha[s] not been sufficiently developed to allow the court[] to make [a] fully informed decision." *Anderson v. Hodel*, 899 F.2d 766, 770–71 (9th Cir. 1990) (quoting Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 475 (1984)); *see also, e.g.*, *United States ex rel. Plumbers &*

*Steamfitters Loc. Union No. 38 v. C.W. Roen Constr. Co.*, 183 F.3d 1088, 1095 & n.3 (9th Cir. 1999); *S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 345 (9th Cir. 1996); *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1278–79 (9th Cir. 1993). Thus, notwithstanding the majority's suggestion to the contrary, *see* Majority Op. at 22–24, the bankruptcy court had leeway to send the case to trial if the undisputed facts presented by the parties were inadequate in the court's informed view to permit summary resolution. Respect for that discretion is another reason to doubt the majority's approach.

5. I recognize that the majority's approach may make some practical sense. Strict application of the finality rules can lead to an unsatisfying rigidity in low-stakes cases like this one. It is understandable that, in cases in which the amount in controversy is less than the cost of a trial, the parties would prefer appeal of the denial of summary judgment over incurring the expense of trial. As a result of its advantages in low-stakes cases, the tactic York employed here could be, and probably will be, used by other litigants with little financially at stake to obtain review of fact-based summary judgment denials.

Congress could, of course, revisit the application of the finality doctrine in circumstances such as these and allow the sort of stipulation and appeal undertaken here. Given the impracticality of funding a full trial that will cost more in attorney's fees and costs than the amount of damages at stake, perhaps Congress should do just that. But it has not done so.

* * *

The majority's decision impermissibly permits an end run around the well-established finality doctrine. I would

conclude that York's appeal should fail because he may not appeal the bankruptcy court's denial of summary judgment. I therefore respectfully dissent. I would not reach the remaining questions addressed in the majority opinion.